GILCHRIST v. WAYCROSS STREET & SUBURBAN RY. CO. et al.

(District Court, S. D. Georgia, E. D.   December 27, 1917.)

1. STREET RAILROADS ⊙═ 66—CHARTER—DUTY TO OPERATE ROAD.
    Though the consent of municipal authorities was a condition precedent to the exercise by street railroad company of its charter power to construct a railway upon the streets of the city, yet, as the company was bound to secure its charter before it could apply to the municipality for consent to use the streets, the charter is not ex proprio vigore mandatory on the company to operate a street railroad system in a particular city.

2. STREET RAILROADS ⊙═ 55—FORECLOSURE SALE—DUTY TO OPERATE.
    A street railroad company, whose charter authorized it to construct a railway upon the streets of a municipality for its railway, under authority mortgaged its property.  The company became insolvent, and, as the line could not be operated without a loss, the mortgage was foreclosed and the property sold, with the right of the purchaser either to operate the system or dismantle and remove the physical property.  The property was bought in by the mortgagee and the sale confirmed.  Held that, while the permanent property of a railroad corporation may be charged, not only in the hands of the original corporation, but of purchasers as well, with the burden of the company's charter obligations, and cannot be relieved of such burden without the consent of the state, yet, as the charter of the street railway company did not of its own force require the company to operate a system, and as the company was authorized to mortgage its property, the property could be sold free from the burden of operating the system.

3. STREET RAILROADS ⊙═ 55—FORECLOSURE—EXTENSION.
    In such case, the fact that a landowner in the municipality entered into a contract with the street railway company for the extension of a car line over his property, and to effectuate that object purchased during receivership a receiver's certificate, did not prevent the sale of the company's property free from the burden of operating a street railway system, for, while the breach of the contract by the company rendered it liable in damages, it created no right or easement in the street railway company's property.

In Equity.  Bill by Albert W. Gilchrist against the Waycross Street & Suburban Railway Company and others.  On application for temporary injunction.  Injunction denied.

Oliver & Oliver, of Savannah, Ga., for plaintiff.

Smith, Hammond & Smith, of Atlanta, Ga., and Parks & Reed and J. L. Sweat, all of Waycross, Ga., for defendants generally.

Smith, Hammond & Smith, of Atlanta, Ga., for defendant Southern Iron & Equipment Co.

EVANS, District Judge.  [1] The case is before me on an application for a temporary injunction.  The Waycross Street & Suburban Railway Company was chartered under the general railroad law, but before it could construct a railroad in the streets of Waycross it had to receive municipal permission.  The consent of the municipal authorities was not a condition precedent to the granting of the railroad company's charter, but was a condition precedent to the exercise by the company of the charter power to construct a railway upon the streets of the city.  Brown v. Atlanta Ry. Co., 113 Ga. 462, 39 S.

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

E. 71. The company must secure its charter before it can apply to the municipality for consent to use the city's streets; hence the charter ex proprio vigore is not mandatory on the company to operate a street railroad in a particular city.

[2] With regard to commercial railroads, it has been held that when once constructed under a lawful charter, the permanent property of the corporation is charged, not only in the hands of the original corporation, but of purchasers as well, with the burden of the company's charter obligations, and cannot be relieved of such burden without the consent of the state. State v. Dodge City St. Ry. Co., 53 Kan. 377, 36 Pac. 747, 42 Am. St. Rep. 295.

As a corollary of this proposition, it is said that the courts have no power to give such assent, as such action is distinctively nonjudicial in character. We may concede all this to be true, but it does not follow in every case that the court is lacking in jurisdiction to enforce its decree, because an incidental effect may be to put it out of the power of a street railway to operate its line in a particular city under a permissive grant by virtue of a charter obtained under the general state law. Iowa v. O. C. Trust Co., 215 Fed. 307, 131 C. C. A. 581, L. R. A. 1915A, 549; Old Colony Trust Co. v. Wickard Bros., 224 Fed. 913, 139 C. C. A. 1; Maryland v. Philadelphia, B. & W. R. Co., 122 Md. 438, 89 Atl. 726.

The street railway company had the authority to mortgage all of its property for corporate purposes. A decree of foreclosure by sale would amount to nothing, if the conditions were such that the railroad must be operated by the purchaser at foreclosure sale, where the railroad could not be operated without loss. No purchaser would buy under compulsion of operating a street railroad at a loss, and unless the court, under such circumstances, could sell the physical property, with the right of removal, the mortgage lien, as well as the debt, would be destroyed. Such were the conditions in the present case. The street railway company was insolvent; it could not operate the road, so as to make it pay expenses, must less the annual interest on its debt. A receiver attempted to operate it, and in aid of that effort was authorized to borrow money on certificates. He could not make the property pay operating expenses, and a decree was taken, foreclosing the mortgage, and fixing the priorities of the liens against the company, and ordering the receiver to advertise for sealed bids. None were submitted. Thereafter by supplemental decree the receiver was directed to sell the street railway property at public sale, with the right of the purchaser either to operate the system or dismantle and remove the physical property. The property was purchased by the mortgagee, who sold it to the Southern Iron & Equipment Company, and the sale was confirmed by the court. The purchaser paid the purchase price and was engaged in removing the property when this bill was filed. Under these circumstances a court of equity had jurisdiction of the subject-matter, and its decree is not void. To hold otherwise is to say that a mortgage creditor of an insolvent street railway company could never realize on his security by a sale of it, if the circumstances are such that the railroad cannot be operated except at a loss and the pur-

chaser be compelled to operate the same. State of Kansas v. Dodge City, 53 Kan. 329, 36 Pac. 755, 24 L. R. A. 564.

[3] The petitioner owns a large body of land in Waycross, has erected thereon a number of houses, and is much interested in the operation of the street railway. He has a contract with the company for the extension of the street car line over his property, and purchased a receiver's certificate to effectuate this object. I do not think this circumstance should prevent the execution of the foreclosure sale and the delivery of the property to the purchaser. The failure of the company to comply with its contract constitutes a breach, rendering it liable in damages. The contract is a personal engagement, and created no easement in the property. Express Co. v. Railroad Co., 99 U. S. 191, 25 L. Ed. 319. I do not think the evidence sufficient to show that petitioner was deterred from objecting to the confirmation of the sale by his conversation with the attorney of the purchaser, who was also attorney of the mortgagee.

After due consideration, I do not think the plaintiff entitled to an injunction, and a temporary injunction is refused, and the restraining order heretofore granted is revoked.